USAO#2021R00172/FMC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. BRIAN R. MARTINOTTI |
| | : | |
| v. | : | Crim. No. 21-796-BRM |
| | : | |
| GREGORY J. BLOTNICK | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1957 |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by indictment, the

Acting United States Attorney for the District of New Jersey charges:

### Count One
### (Wire Fraud)

1.     At all times relevant to this Information:

a.     Defendant GREGORY J. BLOTNICK ("BLOTNICK") resided in New

York and Florida.

b.     BLOTNICK owned and controlled a series of purported businesses

through which he submitted applications for federal COVID-19 emergency relief

funds, including BSC Opportunistic Equity, LP ("BSC Opportunistic") and Brattle

Street GP, LLC ("Brattle GP"). BSC Opportunistic was a Delaware limited

partnership and Brattle GP was a Delaware limited liability company.

c.     Victim-Lender 1 was a financial institution headquartered in Utah.

d.     The Victim Lenders were 13 separate financial institutions,

including Victim-Lender-1, each of which served as a lender for the Paycheck

Protection Program described below.

 e. Bank 1 was a financial institution headquartered in New York.

## Paycheck Protection Program ("PPP")

 f. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.  In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

 g. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which had to be signed by an authorized representative of the business.  The loan application required the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  In the loan application, the small business must state, among other things, its average monthly payroll expenses and number of employees.  These figures were used to calculate the amount of money the business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

 h. A PPP loan application had to be processed by a participating lender. If a loan application was approved, the participating lender funded the loan

using its own money, which is 100% guaranteed by U.S. Small Business Administration (the "SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

i.      PPP loan proceeds had to be used by the business on certain permissible expenses such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business used the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### The Scheme to Defraud

2.      Beginning at least as early as in or around April 2020, through in or around March 2021, in the District of New Jersey and elsewhere, defendant

### GREGORY J. BLOTNICK

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the Victim Lenders and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

### Goal of the Scheme to Defraud

3.      The goal of the scheme was for BLOTNICK to enrich himself by fraudulently obtaining federal COVID-19 emergency relief funds from the Victim

Lenders meant for distressed small businesses by submitting fraudulent loan applications.

**Manner and Means of Scheme to Defraud**

    4.      It was part of the scheme that:

        a.      In or around April 2020 through in or around March 2021, BLOTNICK submitted 21 fraudulent PPP loan applications to the Victim Lenders on behalf of at least nine purported businesses that BLOTNICK controlled, including BSC Opportunistic and Brattle GP. On these loan applications, which sought a total of approximately $6,889,089 in total loans, BLOTNICK falsified various information, including the number of employees, the federal tax returns for his businesses, and payroll documentation. BLOTNICK obtained approximately $4,681,796 in PPP funds and then misused the loan proceeds, including by transferring the funds to brokerage accounts from which he placed more than approximately $3 million in losing stock trades.

        b.      On or about April 25, 2020, BLOTNICK submitted a PPP application to Victim-Lender 1 for BSC Opportunistic seeking a loan for approximately $302,065 (the "Application"). BLOTNICK submitted the Application in his name and listed himself as the owner of BSC Opportunistic.

        c.      The Application and supporting documentation contained materially false and fraudulent information, including falsified payroll documentation for April 2019 through March 2020 claiming that BSC Opportunistic had 17 employees and average monthly payroll amounts of approximately $127,500.

BLOTNICK also certified in the Application that the loan proceeds would be used only for business-related purposes.

        d.    BLOTNICK's fraudulent Application caused Victim-Lender 1 to disburse approximately $302,065 in PPP funds on or about April 30, 2020 via interstate wire through the District of New Jersey to an account that BLOTNICK controlled at Bank 1.

        e.    After fraudulently obtaining $302,065 in PPP funds from Victim-Lender 1, BLOTNICK transferred the funds to brokerage accounts that he owned and controlled at a stock brokerage firm (together, the "Blotnick Brokerage Account"). BLOTNICK then used this money to trade stocks.

        5.    On or about April 30, 2020, for the purpose of executing and attempting to execute the scheme and artifice to defraud, in the District of New Jersey and elsewhere, defendant

## GREGORY J. BLOTNICK

knowingly and intentionally transmitted and caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, a wire transfer of approximately $302,065 in PPP funds from Victim-Lender 1 into BLOTNICK's bank account at Bank 1.

        In violation of Title 18, United States Code, Section 1343.

## Count Two
### (Money Laundering)

6.      The allegations set forth in Paragraphs 1 through 4 of Count One of this Information are realleged here.

7.      On or about May 13, 2020, in the District of New Jersey and elsewhere, defendant

## GREGORY J. BLOTNICK

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a greater value than $10,000, that is, the transfer of approximately $100,000 from a bank account at Bank 1 to the Blotnick Brokerage Account, such property having been derived from a specified unlawful activity, that is, wire fraud.

In violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION AS TO COUNT ONE

1.      As a result of committing the offense alleged in Count One of the
Information, BLOTNICK shall forfeit to the United States, pursuant to 18 U.S.C. §
982(a)(2), any property constituting or derived from proceeds obtained directly or
indirectly as a result of such offense.

## FORFEITURE ALLEGATION AS TO COUNT TWO

2.      As a result of committing the offense alleged in Count Two of the
Information, BLOTNICK shall forfeit to the United States, pursuant to 18 U.S.C. §
982(a)(2), any property constituting or derived from proceeds obtained directly or
indirectly as a result of such offense.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

3.      If by any act or omission of the defendant any of the property subject to
forfeiture:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred of sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be
divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in paragraphs 1 and 2.


RACHAEL A. HONIG
Acting United States Attorney
District of New Jersey

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

CASE NUMBER: 21-_____

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

**v.**

**GREGORY J. BLOTNICK**

**INFORMATION FOR**

**18 U.S.C. §§ 1343 and 1957**

RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

FATIME MEKA CANO
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
(973) 856-9384

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION, U.S. DEPARTMENT OF JUSTICE

CORY E. JACOBS
TRIAL ATTORNEY, FRAUD SECTION
CRIMINAL DIVISION, U.S. DEPARTMENT OF JUSTICE
(202) 616-4994